UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-CV-478

| | |
|---|---|
| DOROTHY C. KNOTTS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| UNIVERSITY OF NORTH CAROLINA | ) |
| AT CHARLOTTE, BRIAN GUNS, | ) |
| PHILIP JONES, and | ) |
| SUBHASHCHRANDA PANDYA, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Amended Verified Complaint and Memorandum in Support (Docs. 24-25), both filed March 23, 2009, Plaintiff's Response in Opposition (Doc. 31) filed April 21, 2009, and Defendants' Reply (Doc. 33), filed April 30, 2009. This matter is ripe for disposition.

**I. BACKGROUND**

Plaintiff Dorothy C. Knotts ("Knotts"), a 63 year old African-American female, was employed as a housekeeper by Defendant University of North Carolina at Charlotte ("UNCC") from February 2000 until her retirement in March 2008. In the summer of 2007, Defendant Subhashchandra Pandya ("Pandya") became Knotts's new supervisor. (Am. Compl. 13.) Soon thereafter, Knotts began to experience workplace conflict with her employer.

The allegations in Knotts' amended verified complaint are as follows. Knotts asserts that Pandya gave better assignments to younger male housekeeping employees and that Pandya would only speak directly to younger male employees. (Am. Compl. 14.) In addition, Knotts states that Pandya would switch the areas she was assigned to clean, so that Knotts was always required to

1

clean the dirtiest places. According to Knotts, these constant reassignments were not imposed upon Knotts's coworkers. Knotts claims that she was also held to a higher standard of cleanliness than her coworkers. (Am. Compl. 16.) Knotts also alleges that she was unfairly required to work alone instead of being assigned to a housekeeping team. (Am. Compl. 17.)

Another source of workplace conflict, according to Knotts, involved the use of a motorized cart. Prior to the summer of 2007, Knotts was allowed to use a motorized cart to carry especially heavy loads of trash from the campus buildings to the dumpster. Once Pandya became Knotts's supervisor, he revoked Knotts's permission to use this cart. Thenceforth, Pandya told Knotts to call him anytime Knotts had a load of trash that was too large for her to carry, and Pandya said that he would take the trash to the dumpster for her. However, whenever Knotts called Pandya to perform this trash removal, Pandya would respond "in an angry and dismissive manner." (Am. Compl. 18.) Knotts does not know of any other employees who were required to call Pandya for trash removal. (Am. Compl. 19.)

At a meeting with her coworkers, Pandya publicly reassigned Knotts to clean different buildings because Pandya claimed that Knotts had complained that the trash where she was previously stationed was too heavy to carry. Knotts, however, denies that she ever made any complaint about the weight of the trash. (Am. Compl. 19.) Knotts complained about Mr. Pandya's embarrassing remarks to her Third Shift Supervisor Essie Spears, to University Housekeeping Administrator Greg Kish, and to Defendant Brian Guns ("Guns"), Director of Housekeeping and Recycling. (Am. Compl. 20.) At the meeting that followed – attended by Kish, Pandya, and Knotts – Pandya stated that he would prefer to have a man remove the trash from the UNCC buildings. (Am. Compl. 20.)

On August 13, 2007, Knotts wrote a letter to her "chain of command," including Guns, Kish,

Spears, Pandya, and Defendant Phil Jones ("Jones"), complaining of her treatment at the hands of Pandya. (Am. Compl. 22.) Specifically, Knotts complained of no longer being allowed to use the motorized cart to move trash, of Pandya's requirement that Knotts contact him for trash removal, and of Pandya's comment during the meeting with Kish that he would "prefer a man to do the trash." (Ex. C. of the Am. Compl.) Knotts did not receive a response to her letter, and she noticed no positive change in Pandya's behavior towards her. (Am. Compl. 23.)

In September 2007, Knotts's permission to change from her uniform into her street clothes while at UNCC so that she could go to another job was revoked without warning by Pandya. This privilege had previously been granted to Knotts with the proviso that she would forego the last 15 minute break of her shift. Despite this agreement, Knotts received a personal conduct "write-up" on September 9 from Pandya for changing clothes at the end of her shift. (Am. Compl. 24.)

On October 2, 2007, Knotts received a "memorandum of counseling" from Guns for unsatisfactory conduct pertaining to the following alleged offenses: (1) violation of the chain of command for writing an anonymous letter to the Vice-Chancellor complaining about the Third Shift Housekeeping Manager, (2) speaking negatively about the Third Shift Housekeeping Manager and other coworkers to another coworker outside of work, and (3) taking complaints to Human Resources instead of to Knotts's direct supervisor. (Am. Compl. 26; Ex. D of the Am. Compl.)

At some point around this same time, Knotts alleges that Pandya began to follow Knotts during her cleaning shift. Pandya would enter the room where Knotts was cleaning, seat himself in a chair, remain silent, and watch Knotts clean. Knotts believes that Pandya intended to intimidate her with this behavior. (Am. Compl. 25.)

In October of 2007, Knotts and a coworker had a confrontation. According to the Petition for a Contested Case Hearing and supporting documents filed by Plaintiff in the North Carolina

3

Office of Administrative Hearings, the confrontation between Knotts and her coworker began when Knotts alleged that her coworker's coat fell on her and that coworker allegedly said "it should have been a brick." According to the investigation performed by Defendant Guns on behalf of UNCC, Knotts said, "That nigger can not talk to me like that. I will call my husband and son to see him." When her shift ended, Knotts' son arrived in the parking lot to confront the coworker. Knotts approached the coworker when he was talking to her son and allegedly taunted the coworker, saying, "Now you're talking to a real man and look at you, you're bowing down, now listen at you."

Later, a grievance hearing was held to discuss a complaint filed by Knotts against a coworker, which was attended by Guns, Pandya, and a member of UNCC's Human Resources department. At this hearing, Pandya accused Knotts of using the word "nigger" to describe other UNCC employees, an accusation which Knotts denies. According to Knotts, Pandya repeated the racial slur in a manner that led Knotts to believe that Pandya was using the word to describe her (Am. Compl. 27.) Knotts avers that none of the other UNCC employees in the room did anything to stop Pandya.

Knotts claims that her health began to suffer as a result of her treatment by Pandya and UNCC. Knotts is diabetic, and during the time under inquiry her blood pressure and glucose levels became unstable. Knotts claims that she quit her job in March 2008 as a result of the treatment that she was subjected to and the strains that this was placing on her health. (Am. Compl. 28-29.)

In her Amended Complaint, Knotts advances claims for Race Discrimination and Retaliatory Constructive Discharge in violation of Title VII and 42 U.S.C. § 1981, age discrimination in violation of the Age Discrimination in Employment Act, negligent supervision, and intentional infliction of emotional distress. Defendants move to dismiss all counts, asserting lack of subject matter jurisdiction, lack of personal jurisdiction, improper service of process, and failure to state a

4

claim.

In Knotts's response, she agrees that all claims made against Defendants Guns, Jones, and Pandya, in both their official and individual capacities, should be dismissed. The Court agrees, and all such claims are therefore dismissed.

Knotts also requests voluntary dismissal without prejudice of her claims for negligent supervision, intentional infliction of emotional distress, discrimination under 42 U.S.C. § 1981, and punitive damages. Pursuant to Fed. R. Civ. P. 41, an action may be dismissed at the plaintiff's request by court order and on terms that the court considers proper. Here, since the Defendants have not filed an answer or moved for summary judgment, Knotts could have filed a notice of dismissal that would have resulted in a dismissal without prejudice of all of these counts. As such, the Court will dismiss these claims without prejudice.

## II. STANDARD OF REVIEW

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although plausibility does not entail probability, the facts in the complaint must establish more than the mere possibility that a defendant acted unlawfully. Id. In considering whether the plaintiff has established a plausible claim for relief, this court is bound to accept the well-pleaded facts of the complaint as true; however, conclusory assertions of law or fact are not entitled to the assumption of truth. Id. at 1949-50. In sum, "[w]hile

a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a [plausible] claim for relief." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (emphasis in original).

### III. DISCUSSION

**A. Sufficiency of Complaint**

In her complaint, Knotts alleges that UNCC "discriminated against [Knotts] on the basis of her race by actions including, but not limited to the use of racial slurs directed at [Knotts], derogatory comments, unlawful disparate treatment, unlawful disparate discipline, harassment, unfair job demands, [and] refusal to address the discrimination." (Am. Compl. 31.) Both sides treat these allegations as asserting claims for racial discrimination by means of disparate treatment and a hostile work environment. The Court agrees with this assessment. The averments of disparate treatment, disparate discipline, and unfair job demands relate to Knotts' claim for disparate treatment. On the other hand, derogatory comments, harassment, and refusal to address discrimination relate to Knotts' claim of a hostile work environment.

Knotts's complaint also alleges age discrimination due to "disparate terms and conditions of employment, including, but not limited to changes in her working conditions and unjustified disciplinary action because of her age." (Am. Compl. 39.)

UNCC argues that Knotts has failed to state a claim for which relief can be granted on all of these counts.

**B. Retaliatory Constructive Discharge**

Knotts' first cause of action alleges retaliatory constructive discharge. (Am. Compl. 7-8). Defendant UNCC argues that plaintiff is barred from bringing a retaliatory constructive discharge claim because Knotts did not first file an EEOC charge alleging discriminatory discharge. (MTD

6

17). Essentially, UNCC argues that Knotts did not exhaust her administrative remedies on the retaliatory constructive discharge claim. Knotts does not address this argument in her memorandum in opposition to the motion to dismiss the amended verified complaint. This court agrees with UNCC and will accordingly **GRANT** UNCC's motion to dismiss Knotts' claim for retaliatory constructive discharge.

Under Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999). A motion to dismiss should only be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law." Id. (quotations omitted).

Prior to filing a suit alleging a violation of Title VII or the ADEA, a plaintiff must first file a charge with the EEOC and exhaust her administrative remedies. 42 U.S.C. § 200e-5(e)(1); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). The scope of the plaintiff's claim is confined by the EEOC charge. Therefore, if the suit alleges claims that were not included in the EEOC charge or claims that would not have naturally arisen from an investigation of the EEOC charges, then such charges are procedurally barred and should be dismissed for lack of jurisdiction. *Id.* Put more simply, if a claim falls outside the scope of the EEOC charge then it is procedurally barred. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). These requirements are equally applicable to both Title VII and ADEA claims. *Puryear v. County of Roanoke*, 214 F.3d 514, 517 n.1 (4th Cir. 2000).

Knotts filed an EEOC charge on November 29, 2007. Am. Compl. ¶ 8 and Pl.'s Ex. A. That EEOC charge made no reference to a retaliatory constructive discharge. *See* Pl.'s Ex. A. Moreover, Knotts alleges that the "dates of discrimination" took place between June 20, 2007 and November 29, 2007 (Pl.'s Ex. A), yet Knotts did not retire until four months after the dates included on the

7

EEOC charge. Am. Compl. ¶29. Knotts cannot rely on her discrimination and hostile work environment claim as a basis for claiming exhaustion of her remedies as to the constructive discharge claim. While there are some circumstances where exhaustion of administrative remedies is satisfied if the claim in question is sufficiently related to properly exhausted claims, such a circumstance is not present in this case. *Spencer v. Ashcroft,* 147 Fed. App'x 373, 375 (2005). Indeed, the Fourth Circuit has found that constructive discharge is an entirely separate act requiring administrative exhaustion. *Young v. Nat'l Ctr. For Health Serv. Research*, 828 F.2d 235, 237-38 (4th Cir. 1987). As such, Knotts' claim for constructive discharge is not "included in the EEOC charge" and does not naturally arise from an investigation of the EEOC charges. *Chacko*, 429 F.3d at 508.

Because Plaintiff did not exhaust her administrative remedies as to the retaliatory constructive discharge claim, this court will **DISMISS** Knotts' retaliatory constructive claim for lack of subject matter jurisdiction in accordance with Federal Rule of Civil Procedure 12(b)(1).

**C. Title VII and ADEA Disparate Treatment**

Plaintiff's first cause of action alleges racial discrimination and her third cause of action alleges age discrimination. A plaintiff demonstrates race or age discrimination under Title VII and the ADEA through one of two methods. The first method is a "mixed-motive" approach, whereby "a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that [race] or age discrimination motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), *cert. dismissed*, 543 U.S. 1132, 160 L. Ed. 2d 1090 (2005). A second method of demonstrating race discrimination requires a plaintiff to show: (1) she is a member of a protected class, (2) she suffered adverse employment action, (3) she was performing her job duties at a level

8

that met her employer's legitimate expectations at the time of the adverse employment action, and (4) similar employees outside the protected class were treated differently. *Id.*

Both the mixed-motive and pretext methods require a plaintiff to allege an "adverse employment decision." An adverse employment decision is a tangible employment action constituting "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 141 L. Ed. 2d 633, 652-53 (1998). Conversely, "a bruised ego is not enough," a "reassignment to [a] more inconvenient job [is] insufficient," and even a "demotion without change in pay, benefits, duties, or prestige [is] insufficient." *Id.* at 761, 141 L. Ed. 2d at 653 (quotations and citations omitted). "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." *James v. Booz-Allen & Hamilton Inc.*, 368 F.3d 371, 376 (4th Cir. 2004).

Here, even when taking the allegations in her complaint as true, Knotts fails to allege an adverse employment action. Knotts' complaint includes allegations that other employees were given better job assignments, that Knotts was required to work alone and not in a team, that Knotts was not allowed to use a motorized cart to haul trash, that Knotts' peers were informed that she said the trash was too heavy for her to carry, that Knotts was not allowed to change out of her uniform during work hours, that Knotts' supervisor observed her during the course of her work, and that Knotts' employer repeated a racial slur that the employer believed Plaintiff used to describe another employee.

Simply stated, such allegations do not constitute adverse employment action. Rather, the allegations in Knotts' complaint are best defined as "trivial discomforts endemic to employment." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). Because Plaintiff does not allege an adverse

employment action, Plaintiff fails to make out a "plausible" race or age discrimination claim. *See McCain v. Waste Mgmt., Inc.,* 115 F. Supp. 2d 568, 575 (D. Md. 2000) (noting that the Fourth Circuit has limited the term "adverse employment action" to ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating); *see also Harris v. Evans*, 221 F. Supp. 2d 635, 636-37 (D. Md. 2002) ("Plaintiff's claims under Title VII for various other work-related actions, *e.g.* reassignments, detail, assigned job duties, and a poor performance rating, do not involve tangible, adverse job actions as necessary to give rise to a Title VII claim.").

### D. HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff also alleges that Defendant created a hostile work environment. In order to state a hostile work environment claim, a plaintiff must allege: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied,* 540 U.S. 940, 157 L.Ed. 2d 253 (2003). In order to survive a motion to dismiss, a plaintiff must meet the "basic pleading requirement" of setting forth facts "sufficient to allege each element of his claim." *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002).

The main dispute in this case centers on whether Pandya's conduct was sufficiently severe or pervasive to create a hostile work environment. In order to be actionable, sexual harassment must be objectively hostile or abusive, and the victim must subjectively perceive it as such. *Harris*, 510 U.S. at 22, 114 S. Ct. 367. In its brief, UNCC does not contest that Knotts can satisfy the subjective prong of the test. Thus, this Court will examine whether Knotts' allegations can also satisfy the objective prong.

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 126 L. Ed. 2d 295, 302 (1993). A court determines "whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. Boca Raton*, 524 U.S. 775, 787-88, 141 L. Ed. 2d 662, 676 (1998). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788, 141 L. Ed. 2d at 676 (quotation omitted).

Examining the totality of the circumstances, Plaintiff's hostile work environment claim must fail because Defendant's conduct did not create an environment that a reasonable person would find hostile or abusive. Knotts complains of only two incidents where she was subjectively offended by a statement of a co-worker or supervisor. *See Bakersville v. Culligan Intern. Co.*, 50 F.2d 428, 431 (7th Cir. 1995) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage."). First, after a coworker's coat fell on Knotts, the coworker said "it should have been a brick." Such a statement does little, if anything, to contribute to a claim of hostile work environment. *See Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008) ("The occasional off-color joke or comment is a missive few of us escape. Were such things the stuff of lawsuits, we would be litigating past sundown in ever so many circumstances."); *Faragher*, 524 U.S. at 788, 118 S. Ct. 2275 (noting that simple teasing and offhand comments do not create a hostile work environment).

The second statement that Knotts alleges contributed to the hostile work environment claim

was made by her supervisor, Subhashchandra Pandya. Knotts alleges that Pandya accused Knotts of using the word "nigger" to describe a coworker. Pandya allegedly repeated this slur in a way that made Knotts subjectively believe he was using the term to describe her. This Court in no way condones Pandya's use of the word. Pandya's statement, however, must be examined in light of all the surrounding circumstances, expectations, and relationships. *Jennings,* 482 F.3d at 696. Pandya's use of the word came only as a result of his questioning Knotts as to whether Knotts used the word. Moreover, Knotts does not allege that Pandya ever used the word outside of their meeting. A reasonable person would not find Pandya's line of questioning to constitute objectively hostile or abusive conduct. *See Belton v. City of Charlotte*, 175 Fed. App'x. 641, 656-57 (4th Cir. 2006) (holding a coworker's single use of a racial slur did not permeate the employee's work environment with discriminatory insult and abuse); *Skipper v. Giant Food Inc.*, 68 Fed. App'x 393, 398-99 (4th Cir. 2003) (affirming grant of summary judgment on hostile work environment claim when supervisor used racial slur on one occasion and followed plaintiff while he worked).

In addition to the statements, Knotts' complaint alleges she was reassigned duties, required to work alone, and that her supervisor observed her while she worked. On whether such actions create a hostile work environment, this court finds instructive the case of *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761 (4th Cir. 2003). In *Bass*, the plaintiff was a black woman over age forty who began to have trouble with her employer when some of her employment duties changed. *Id.* at 763. Though Bass received no reduction in pay as a result of the change in her duties, Bass complained that she had not been given any reason for the change in her duties and such a change in duties created a hostile work environment. *Id.* In affirming dismissal of Bass' hostile work environment claim, the Fourth Circuit noted that "Bass' complaint was full of problems she experienced with her co-workers and supervisors" yet they did not seem "to have anything to do

12

with gender, race, or age harassment." *Id.* at 765. The allegations in Bass' complaint merely told "a story of workplace dispute regarding her reassignment and some perhaps callous behavior by her supervisors." *Id.* Importantly, Bass' complaint did not "describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim." *Id.*

The similarities between *Bass* and the present case are striking. Much like the plaintiff in *Bass*, Knotts worked for her employer for several years without issue until her supervisor reassigned some of her duties. Also like the plaintiff in *Bass,* Knotts did not receive a decrease in pay when her employer changed her duties. Moreover, both plaintiffs had conflicts with their immediate supervisors. Indeed, in the midst of those workplace conflicts, both employers exhibited behavior that could be appropriately characterized as "callous." Yet callous behavior alone does not create a cause of action. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 118 S. Ct. 998, 140 L.Ed. 2d 201 (1998) (reasoning that Title VII does not create "a general civility code"). Notably absent from both complaints are racially derogatory comments that an objective person would believe to be directed at the plaintiff. In sum, both plaintiffs allege their employer created a hostile work environment without "describing the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim." *Bass*, 324 F.3d at 765.[1]

Accordingly, when viewing the totality of the circumstances in the light most favorable to

---

[1] A review of case law from our Circuit confirms that a hostile work environment is one that is permeated by discriminatory animus. *See Jennings v. University of North* Carolina, 483 F.3d 686, 696-98 (4th Cir. 2007) (holding factual issues existed precluding summary judgment where university soccer coach constantly inquired into players' sexual activities and subjected players to sex-based verbal abuse in team settings); *Anderson v. G.D.C., Inc.,* 281 F.3d 452, 459 (4th Cir. 2002) (evidence sufficient to submit a hostile work environment claim when Plaintiff was subject to "verbal assaults of the most vulgar and humiliating sort"); *EEOC v. R & R Ventures,* 244 F.3d 334, 340 (4th Cir. 2001) (concluding that environment was hostile when employee was subjected to comments about her breasts and buttocks and inappropriate sexual remarks on a daily basis).

13

Knotts, including the statements and actions of Knotts' supervisors, Knotts' complaint fails to sufficiently allege a hostile work environment. For the foregoing reasons, **this Court will GRANT** UNCC's motion to dismiss Knotts' hostile work environment claim.

### E. Service of Process

UNCC's first argument is that Knotts' complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficiency of service of process. "A motion for Rule 12(b)(5) is the appropriate means for challenging the manner of sufficiency of service of process. The Plaintiff bears the burden of establishing that service of process has been accomplished in a manner that complies with Rule 4." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996) (citations omitted). UNCC argues that Knotts improperly served the original summons and complaint because Knotts, a party to the lawsuit, mailed the summons and complaint. Additionally, UNCC argues that the amended verified complaint Knotts filed with the court did not cure such a defect in process.

Knotts does not contest that she mailed the summons and complaint to UNCC. Instead, Knotts argues that service of process was proper because service upon state agencies and individuals can be accomplished by following state law for serving a summons. Fed. R. Civ. P. 4 (e)(1); Fed. R. Civ. P. 4(j)(2)(B). North Carolina state law provides that service may be accomplished by mailing a copy of the summons and complaint, registered or certified mail, return receipt requested, addressed to the party to be served, as well as the use of a designated delivery service to deliver the summons and complaint to the addressee. N.C. Civ. P. R. 4(j)(1)(c); N.C. Civ. P. R. 4(j)(4)(a).

Knotts' argument, however, misconstrues Rule 4. The plain language of Rule 4(c) provides that, "Any person who is at least 18 years old and <u>not a party</u> may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2) (emphasis added). Rule 4(c) deals with "who may serve" while Rule 4(e) and

14

Rule 4(j) deal with the method of service. Nothing in the plain language of Rule 4 or the advisory notes suggest that Rule 4(j) is meant to vitiate Rule 4(e)'s requirement that someone other than a party effect service.

Other courts considering this issue have ruled that even when service by mail is proper, it cannot be a party who mails it. *See Constien v.* U.S., - - - F.3d - - -, 2010 WL 4983000, *5 (10th Cir. 2010); *Lechner v. Citimortgage, Inc.,* No. 4:09-CV-302-Y, 2009 WL 2356142, at *2 (N.D.Tex. July 29, 2009) (unpublished); *Walker v. Pharm. Research & Mfrs. of Am.,* 569 F.Supp.2d 209, 214-15 (D.D.C.2008); *Albra v. Advan*, 490 F.3d 826 (11th Cir. 2007) (service by pro se party by mail not effective and suit dismissed); *Smith v. United States,* 475 F.Supp.2d 1, 9 (D.D.C.2006); *Lindsey v. United States,* 448 F.Supp.2d 37, 46 (D.D.C.2006) ("Read together, then, Rules 4(i)(1) and 4(c)(2) direct that service upon the United States be made (1) by a person ... age 18 or older (2) who is not a party (3) either through in-person delivery or sending by certified mail a copy of the summons and complaint to both the Attorney General and the United States Attorney for the judicial district where the action is brought.").

This Court finds that Knotts has never properly served UNCC pursuant to Rule 4. Accordingly, this court will dismiss Knotts' complaint pursuant to Federal Rule of Civil Procedure 12(b)(5).

## IV. CONCLUSION

For all the foregoing reasons, this Court will **ORDER** that:

(1) Knotts' claims against Defendants Guns, Jones, and Pandya in both their official and individual capacities are hereby **DISMISSED**.

15

(2) Knotts' claims for negligent supervision, intentional infliction of emotional distress, discrimination under 42 U.S.C. § 1981, and punitive damages are **DISMISSED WITHOUT PREJUDICE.**

(3) Knotts' claim for retaliatory constructive discharge is **DISMISSED** for failure to exhaust her administrative remedies.

(4) Knotts' claim alleging disparate treatment under Title VII and the ADEA is hereby **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

(5) Knotts' claim alleging a hostile work environment under Title VII and the ADEA is hereby **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

(6) Alternatively, Knotts' complaint in its entirety should be and it is hereby **DISMISSED** for failure to serve pursuant to Federal Rule of Civil Procedure 12(b)(5).

(7) UNCC's Motion to Strike the amended complaint (Document#26) is hereby **DENIED** as moot.

Signed: February 10, 2011

Richard L. Voorhees
United States District Judge